# United States Court of Appeals for the Federal Circuit

2009-5021, -5022, - 5023

ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant,

and

THE BOEING COMPANY,

Defendant-Appellant.


David R. Hazelton, Latham & Watkins LLP, of Washington, DC, argued for plaintiff-cross appellant. With him on the brief were Roger S. Goldman and Kyle R. Jefcoat.

Douglas K. Mickle, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. With him on the brief were Michael F. Hertz,Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Brian M. Simkin, Assistant Director. Of counsel on the brief were Christopher L. McMahon and W. Michael Rose, Air Force Legal Operations Agency, United Stated Department of the Air Force, of Arlington, Virginia, and Kenneth C. Kitzmiller, Office of the Staff Judge Advocate, United States Department of the Air Force, of Tinker Air Force Base, Oklahoma.

Scott M. McCaleb, Wiley Rein LLP, of Washington, DC, argued for defendant-appellant The Boeing Company. With him on the brief were Rand L. Allen and Heidi L. Bourgeois.

Appealed from: United States Court of Federal Claims

Judge Charles F. Lettow

# United States Court of Appeals for the Federal Circuit

2009-5021, -5022, -5023

ALABAMA AIRCRAFT INDUSTRIES, INC. - BIRMINGHAM,

Plaintiff-Cross Appellant,

v.

UNITED STATES,

Defendant-Appellant,

and

THE BOEING COMPANY,

Defendant-Appellant.

Appeals from the United States Court of Federal Claims in 08-CV-470, Judge Charles F. Lettow.

———————————————

DECIDED:  November 17, 2009

———————————————

Before NEWMAN, PLAGER, and MOORE, <u>Circuit Judges</u>.

PLAGER, <u>Circuit Judge</u>.

This is a post-award bid protest case.  The Department of the Air Force (agency) awarded a billion-dollar-plus contract to the Boeing Company (Boeing) for long-term maintenance on the Air Force's fleet of KC-135 Stratotanker aircraft.  Alabama Aircraft Industries, Inc. - Birmingham (AAII),[1] an unsuccessful bidder on the contract, protested

---

[1]    AAII was formerly known as Pemco Aeroplex, Inc.  For simplicity, this opinion refers only to AAII.

the award through the established administrative channels and eventually, pursuant to 28 U.S.C. § 1491(b)(1), filed a bid protest complaint in the United States Court of Federal Claims.

Under the statute, the Court of Federal Claims reviews the agency's decision according to the standards contained in the Administrative Procedure Act. 28 U.S.C. § 1491(b)(4). Thus, the court can set aside the agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Following cross-motions for judgment on the administrative record, the trial court adjudged that the agency's contract award was arbitrary and capricious, set aside the award, enjoined the Air Force from proceeding with the award to Boeing, and ordered the agency to resolicit the procurement. Ala. Aircraft Indus., Inc. - Birmingham v. United States, 83 Fed. Cl. 666, 700, 703 (2008).

BACKGROUND

The Air Force issued its Request for Proposals No. FA8105-05-R-0014 (RFP) in August 2005 for a contract to perform maintenance on KC-135 Stratotanker aircraft. The RFP contemplated the award of a commercial item contract with a five-year base period[2] and five one-year options. The award was to be made to the offeror whose proposal represented the best value to the Air Force based on four evaluation factors. As part of the agency's evaluation of the cost/price factor, the RFP required a 'price-realism' analysis based on certain rate information submitted by the offerors.

In September 2007, after extensive discussions and subsequent evaluations by the Air Force Source Selection Evaluation Team and Source Selection Advisory

---

[2] This was later modified to a four-year and one-month base period.

Council, the Air Force Source Selection Authority awarded the contract to Boeing. AAII filed a protest of the award with the Government Accountability Office (GAO), as the law provides. See Competition in Contracting Act, 31 U.S.C. §§ 3551-56. The GAO denied the protest on all grounds raised by AAII, with the exception of the agency's cost/price evaluation. The GAO concluded that the record was insufficient for the GAO to determine the reasonableness of the agency's price-realism analysis. In particular, the GAO was concerned about a significant labor hour reduction in Boeing's final proposal revisions, especially in the context of an aging aircraft fleet, an issue discussed in an Air Force "Talking Paper" submitted to the GAO but not part of the original RFP.

In response to the GAO's decision and consistent with its recommendations, the Air Force undertook another detailed analysis of the offerors' proposals and documented the various factors supporting its conclusion that the prices proposed by all offerors were realistic and reasonable. The agency noted that because aging aircraft issues were not predictable with any certainty, the RFP instructed offerors to base their proposals on a three-tier work package as explained in Addendum 1 to the RFP. The three-tier work package contemplated a basic 'programmed depot maintenance' (PDM) element, an 'intermittent task' (IT) element, and an 'over and above' (O&A) work element. The agency further explained that the RFP provided for the agency to negotiate new work packages as might be needed in future years, as set forth in the Addendum. Based on this review, the Air Force in March 2008 affirmed the contract award to Boeing. AAII subsequently filed a second protest with the GAO. The GAO, in view of the Air Force's explanation, denied the second protest in June 2008.

AAII then filed its complaint in the Court of Federal Claims. Boeing was granted leave to participate in the case as an intervening defendant. On cross-motions for judgment on the administrative record, with one exception the trial court rejected AAII's claims, including alleged organizational conflicts of interest on the part of Boeing and the agency's evaluation of Boeing's past performance. The trial court, however, held that the Air Force's price-realism analysis was "arbitrary and capricious" because the agency failed "to deal explicitly with the aging-fleet issue in the RFP" and then sought "to sidestep the aging-fleet issue in the price-realism analysis of Boeing's prevailing offer." Ala. Aircraft, 83 Fed. Cl. at 700. The court ordered the Air Force to "resolicit the procurement and take the necessary steps in a new solicitation to address explicitly the role of an ever-aging KC-135 fleet on the PDM to be performed." Id. at 703.

The Government and Boeing appealed the decision of the Court of Federal Claims to this court. AAII then filed a cross-appeal challenging the trial court's rejection of its conflicts of interest and past performance claims. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the trial court's judgment on the administrative record without deference. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). This means that we apply the APA "arbitrary and capricious" standard anew to the agency's procurement decision. Id. Courts have found an agency's decision to be arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a

difference in view or the product of agency expertise." <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.</u>, 463 U.S. 29, 43 (1983).

The trial court dealt thoughtfully and comprehensively with the various issues raised by AAII. With one exception, the price-realism analysis, we find nothing on which to fault the trial court. With regard to the price-realism analysis conducted by the Air Force, the trial court disagreed with the Air Force's decision to reaffirm its conclusions following the review requested by the GAO, and disagreed with the GAO when the GAO concluded, based on this review, that the bids were properly evaluated.

The trial court's concern was with the issue of aging aircraft. As the trial court understood it, "the RFP and Addendum I did not notify offerors that the Air Force was seeking to receive proposals that were premised upon a non-aging KC-135 fleet. As a consequence, the Air Force's price-realism analysis that relies upon a non-aging fleet for its conclusions is fatally flawed." <u>Ala. Aircraft</u>, 83 Fed. Cl. at 700.

It is correct that the issue of aging aircraft was not explicitly addressed in the Air Force's RFP, though there can be little doubt that, since those aircraft first went into service decades ago, both the Air Force and the potential bidders were aware that the KC-135 tanker fleet was aging. The Air Force explained that "[t]here is no mention of aging aircraft in the evaluation criteria because the Air Force realized that aging aircraft issues were 'not predictable with any certainty.'" United States Br. 33 (citing JX 29156).

As the record shows, the agency decided to handle the uncertainties associated with the maintenance of aging aircraft by requiring offerors to base their proposals on a work package that included three elements: the basic maintenance activity (PDM), the additional discrete items to be performed on some aircraft (IT), and the unexpected

work (O&A). The RFP explained to offerors exactly how their price proposals would be evaluated based on their prices for these various elements of the work package. The agency believed that this comprehensive framework, along with the periodic adjustments to the work package contemplated by the RFP, was the best way to account for the uncertain impact of aging aircraft.

The trial court thought otherwise, stating that the RFP should have explicitly addressed the problem of aging aircraft, and finding that the agency's price-realism analysis was flawed because it did not expressly consider the impact of the aging fleet. But there is a difference between the Air Force's decision not to base specific requirements in the RFP on the explicit problem of an aging fleet of aircraft and to deal with the imponderables in the context of the three-part work program, and the trial court's assumption from this that the Air Force "was seeking to receive proposals that were premised upon a non-aging KC-135 fleet." Ala. Aircraft, 83 Fed. Cl. at 700.

The trial court's duty was to determine whether the agency's price-realism analysis was consistent with the evaluation criteria set forth in the RFP, see Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004), not to introduce new requirements outside the scope of the RFP. The court's attempt to rewrite the RFP to account for the impact of aging aircraft in the manner the court preferred went beyond the scope of the court's review, and amounted to an impermissible substitution of the court's judgment for the agency's with regard to how the contract work should be designed. See Motor Vehicle Mfrs., 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency.").

This is not a case in which the agency "entirely failed to consider an important aspect of the problem." <u>Id.</u> As explained, the agency considered the aging aircraft issue, but because the impact on future requirements was unknown, it decided the best approach was to provide all offerors with the three-tier work package on which to base their proposals. This was a determination well within the agency's discretion. The agency's subsequent price-realism analysis based on the set work package was not arbitrary and capricious, and the trial court's contrary determination was not within the court's scope of review under the APA standard.

We have considered AAII's arguments regarding alleged organizational conflicts of interest and the agency's evaluation of past performance, and we concur with the trial court's decision on those issues.

## CONCLUSION

For the reasons discussed, the judgment of the trial court is reversed. The injunction against proceeding with the contract award to Boeing is vacated, as is the award to AAII of costs incurred in bid preparation and proposal.

<u>REVERSED</u>